# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| v. | : CRIMINAL NO. 18-114 |
| SHANIF RODGERS | : |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION
FOR EARLY TERMINATION OF SUPERVISED RELEASE**

The United States of America, by its undersigned attorneys, Jennifer Arbittier Williams, Acting United States Attorney for the Eastern District of Pennsylvania, and K.T. Newton, Assistant United States Attorney, respectfully submits its opposition to the defendant's motion for early termination of supervised release. The defendant seeks termination of supervised release after serving only a portion of the period imposed by the Court as part of his sentence. He is barred from doing so by the provisions of his plea agreement, where he waived claims to such relief. Further, he offers no reason that he is unduly harmed in any manner by serving the full sentence imposed by the Court. The sentence of supervised release was necessary and appropriate, and this sentence should not be altered. The motion should be denied.

**I.     FACTS AND DEFENDANT'S WRITTEN PLEA AGREEMENT**

On March 19, 2018, Shanif Rodgers, having waived indictment by a grand jury, was charged by information with one count of felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).  On April 10, 2018, he appeared before this Court and

entered a guilty plea to the sole count of the Information. The maximum sentence of imprisonment was 10 years, and the maximum sentence of supervised release was three years. The defendant entered a plea agreement, in which the government agreed to a three-level reduction for acceptance of responsibility, and the defendant agreed that, with limited exceptions, he would neither appeal nor present any collateral challenge to his conviction or sentence.

At the guilty plea colloquy, this Court reviewed this provision with the defendant and assured that the plea was entered knowingly and intelligently, with regard to the plea in general and the appellate waiver in particular. The defendant had been in local and federal custody from January 24, 2017 until February 24, 2017, and had been on pretrial and presentence release since February 24, 2017.

On January 21, 2020, the district court imposed sentence. The applicable guideline is U.S.S.G. § 2K2.1. Shanif Rodger's base offense level is 14 pursuant to § 2K2.1(a)(6), that level is increased by 4, pursuant to § 2K2.1(b)(4)(B), as the firearm had an obliterated serial number, for an adjusted offense level of 18. PSR ¶¶ 17-23.

The court determined that the offense level under the advisory Sentencing Guidelines, with a 3 level downward adjustment for acceptance of responsibility, was 15, and the defendant's criminal history category was III, producing an advisory sentencing range of 24-30 months. The court granted the government's motion for a downward departure pursuant to U.S.S.G. § 5K1.1 and imposed a sentence of time served, well below that range. The sentence was thus less than the statutory maximum of ten years, and did not represent an upward departure or variance from the applicable guideline

range. In short, the circumstances outlined in the plea agreement in which an appeal or collateral challenge would be permitted did not occur.

The defendant did not appeal. He served the sentence of imprisonment, and commenced serving the period of supervised release. Now, in violation of his plea agreement, he seeks to change that sentence by seeking a shortening of his term of supervised release. The Court's sentence should remain undisturbed.

## II.     THE PLEA AGREEMENT BARS THE RELIEF SOUGHT

The Third Circuit has made clear that the appellate/collateral attack waiver provisions that this defendant agreed to in his written plea agreement cover this very circumstance, and the defendant is now proscribed from asking this Court to change his sentence.

In *United States v. Damon,* 933 F.3d 269 (3d Cir. 2019), the Court noted that "[w]aivers in plea agreements are neither new nor unusual, and we have long enforced their terms." *Id*. at 272. Damon pled guilty pursuant to a plea agreement where he waived appeals or collateral attacks on his sentence. He did not dispute that the plea agreement in fact contained the waiver provisions. Rather, Damon argued that "sentence" referred only to the term of imprisonment, and did not apply to a later request to shorten his term of supervised release. *Id.* Utilizing the "well-established principle that plea agreements, although arising in the criminal context, are analyzed under contract law standards," *id.* at 273 (citing *United States v. Corso*, 549 F.3d 921, 927 (3d Cir. 2008)), the Court found that the term "sentence" to be both unambiguous and to include supervised release,

stating: "The ordinary meaning of 'sentence' can only reasonably be read to include all forms of punishment or penalties imposed on a defendant. By extension, Damon's 'sentence' must be read to include the term of his supervised release, bringing Damon's challenge within the scope of the bargained-for waiver." *Damon*, 933 F.3d at 273.

The Third Circuit thus held that a petition for early termination was a "challenge" to the sentence that was waived by the clear language of the plea agreement and that the defendant "cannot now challenge the term of his supervised release by reframing it as a post-sentence modification." *Id.* at 275.

The waiver in this case similarly applies to any post-conviction challenge to a "sentence," and thus the waiver applies to a motion for termination of supervised release. The only remaining question is whether the waiver is enforceable. It plainly is.

The Third Circuit has held that three factors must be considered: "(1) whether the waiver of the right to appeal her sentence was knowing and voluntary; (2) whether one of the specific exceptions set forth in the agreement prevents the enforcement of the waiver; i.e., what is the scope of the waiver and does it bar appellate review of the issue pressed by the defendant; and (3) whether enforcing the waiver would work a miscarriage of justice." *United States v. Goodson*, 544 F.3d 529, 536 (3d Cir. 2008) (internal quotation marks omitted; quoting *United States v. Jackson*, 523 F.3d 234, 243-44 (3d Cir. 2008)).

In this case, consideration of all of the elements dictates enforcement of the waiver and summary denial of the defendant's motion.

      **A.     The Waiver Was Knowing and Voluntary.**

Upon a motion for summary affirmance based on a plea agreement waiver, this Court's first task is to assure that the waiver was entered knowingly and voluntarily. *See United States v. Mabry*, 536 F.3d 231, 237-38 (3d Cir. 2008), *abrogated on other grounds, Garza v. Idaho,* 139 S. Ct. 738 (2019).[1] The question is whether "the district court 'inform[ed] the defendant of, and determine[d] that the defendant underst[ood] . . . the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence' as Federal Rule of Criminal Procedure 11(b)(1)(N) requires." *Id.* at 239 (bracketed material and ellipsis in original).

The defendant's plea was knowing and voluntary, and indeed the defendant has not claimed otherwise.[2] The Court addressed the waiver with the defendant, and also assured more broadly that the defendant was competent, that the plea agreement was explained to the defendant, and that the defendant had a full opportunity to discuss the agreement with counsel and make an informed decision. Indeed, the voluntariness of the

---

    [1]  *Garza* held that an attorney provides ineffective assistance if he does not comply with a defendant's direction to file a notice of appeal, even if the defendant entered an appellate waiver. That situation is not at issue here.

    [2]  Indeed, the defendant did not object during the guilty plea proceeding to the adequacy of the colloquy, and therefore any current objection that the Court did not comply with Rule 11(b)(1)(N) in explaining the waiver would be reviewed for plain error. *United States v. Goodson*, 544 F.3d 529, 539 (3d Cir. 2008).

waiver is confirmed by the fact that the defendant reaped substantial benefits from the plea agreement. The government agreed to make a motion for downward departure, an action which resulted in a significant reduction from the advisory guideline range which the defendant faced. It is therefore clear why the defendant willingly agreed to the appellate waiver which the government proposed as part of the bargain.

### B. No Exception to the Waiver Applies.

None of the narrow exceptions in the waiver applies in this case. Specifically, the plea agreement permits the presentation only of claims that a sentence exceeded the statutory maximum on any count, that the Court imposed an upward departure in the guideline calculation, or that the Court imposed an upward variance from the guideline range. As explained earlier, none of those circumstances occurred.[3]

### C. This Case Does Not Present a Miscarriage of Justice.

Because the waiver was entered knowingly and voluntarily, it must be enforced in the absence of a miscarriage of justice. In *United States v. Khattak*, 273 F.3d 557 (3d Cir. 2001), the Court held that waivers of appeal are enforceable, but observed that "[t]here

---

[3] The agreement also permits presentation of claims of ineffective assistance of counsel. However, under settled law, such a claim should be presented in a timely collateral petition under 28 U.S.C. § 2255, which the defendant did not do. *See, e.g., Massaro v. United States,* 538 U.S. 500 (2003); *United States v. Thornton,* 327 F.3d 268, 271-72 (3d Cir. 2003).

may be an unusual circumstance where an error amounting to a miscarriage of justice may invalidate the waiver." *Id.* at 562.

There was no miscarriage of justice in this case. The Court in *Khattak* did not provide a definitive list of situations which amount to a "miscarriage of justice." It observed that other appellate courts have suggested that only extraordinary situations would suffice. *See, e.g.*, *United States v. Brown*, 232 F.3d 399, 403 (4th Cir. 2000) (there may be a miscarriage of justice if the sentence was "1) imposed in excess of the maximum penalty provided by law or 2) based on a constitutionally impermissible factor such as race."); *United States v. Joiner*, 183 F.3d 635, 645 (7th Cir. 1999) (may be miscarriage of justice if the plea agreement was the product of ineffective assistance of counsel). *Khattak* embraced the view of the First Circuit, that a reviewing court should evaluate appellate waivers case-by-case, considering the error claimed by the defendant and such factors as "the clarity of the error, its gravity, its character (e.g., whether it concerns a fact issue, a sentencing guideline, or a statutory maximum), the impact of the error on the defendant, the impact of correcting the error on the government, and the extent to which the defendant acquiesced in the result." 273 F.3d at 563 (quoting *United States v. Teeter*, 257 F.3d 14, 25-26 (1st Cir. 2001)).

It is apparent that the "miscarriage of justice" exception is quite narrow. It "will be applied sparingly and without undue generosity," *United States v. Wilson*, 429 F.3d 455, 458 (3d Cir. 2005) (quoting *United States v. Teeter*, 257 F.3d 14, 26 (1st Cir. 2001)), only where "manifest injustice" would result by enforcing the appellate waiver, *Gwinnett*, 483

F.3d at 206. Simply because an issue is meritorious is not sufficient. Adopting the view of other Circuits, this Court stated in *Khattak*:

> [B]y waiving the right to appeal, a defendant necessarily waives the opportunity to challenge the sentence imposed, regardless of the merits. As the Court of Appeals for the Eleventh Circuit explained:
>
>> A waiver of the right to appeal includes a waiver of the right to appeal difficult or debatable legal issues - indeed, it includes a waiver of the right to appeal blatant error. Waiver would be nearly meaningless if it included only those appeals that border on the frivolous . . . . While it may appear unjust to allow criminal defendants to bargain away meritorious appeals, such is the necessary consequence of a system in which the right to appeal may be freely traded.
>
> [*United States v. Howle*, 166 F.3d 1166, 1169 (11th Cir. 1999)]; *see also United States v. Wenger*, 58 F.3d 280, 282 (7th Cir.1995) ("Defendants who appeal from sentences following plea agreements always point to unanticipated and unwelcome developments. . . . To say that a waiver of appeal is effective if and only if the defendant lacks grounds . . . is to say that waivers will not be honored.").

*Khattak*, 273 F.3d at 561-62. *See also United States v. Castro*, 704 F.3d 125, 138 (3d Cir. 2013) (with regard to a claim of insufficiency of the evidence, a defendant establishes a miscarriage of justice allowing the claim to be considered only if "the record is entirely devoid of evidence that he committed each element" of the offense); *United States v. Schweitzer*, 454 F.3d 197, 205 (3d Cir. 2006) (applying waiver to preclude appeal of challenge to allegations in indictment).

Notably, the waiver precludes ordinary claims of sentencing error. *See Castro*, 704 F.3d at 141-42 ("It appears instead that a district court's arguably erroneous calculation of a guideline range 'is precisely the kind of "garden variety" claim of error contemplated by [an] appellate waiver.'") (quoting *Sotirion v. United States*, 617 F.3d 27, 38 (1st Cir.

2010); *United States v. Lockett*, 406 F.3d 207, 212-14 (3d Cir. 2005) (meritorious sentencing argument under *Booker* is not a basis for the defendant to evade his appellate waiver); *United States v. Jackson*, 523 F.3d 234, 244 (3d Cir. 2008) ("it will be a rare and unusual situation when claims of an unreasonable sentence, standing alone, will be sufficient to invalidate a waiver because of a miscarriage of justice.");[4] *United States v. Banks,* 743 F.3d 56, 58-59 (3d Cir. 2014) (where both prison terms were within the ranges specified in the plea agreement, and the entire sentence was well below the statutory maximum, there is no foundation to conclude that the sentence constituted a miscarriage of justice permitting abrogation of the appellate waiver); *United States v. Perez*, 514 F.3d 296, 298 (3d Cir. 2007) (enforcing waiver of right to appeal restitution order, as that was a term of sentencing regarding which the defendant waived the right to appeal).

In this case as well, the defendant has not presented any issue falling within the narrow miscarriage of justice exception. The defendant pled guilty to and admitted the charge, and the district court then imposed a sentence well below the advisory guideline range (a sentence which may be presumed reasonable, *Rita v. United States*, 551 U.S.

---

[4] In *Jackson*, the Court rested its view in part on the fact that the Supreme Court, in *Gall v. United States*, 552 U.S. 38 (2007), made clear that sentencing decisions of a district court must be afforded considerable deference on appeal; thus, it is difficult to conceive of a case in which such a discretionary decision would cause a miscarriage of justice. In *Jackson*, where the defendant only sought to appeal the reasonableness of his sentence, this Court concluded that the "case obviously does not present the 'unusual circumstances' we contemplated in *Khattak*." *Jackson*, 523 F.3d at 244.

338, 347 (2007)), and did not take any significant action which either party failed to anticipate or address. The defendant's mere desire to terminate supervised release surely does not set forth any miscarriage of justice.

## III. EARLY TERMINATION IS NOT WARRANTED IN ANY EVENT

For the reasons set forth above, the motion should be summarily denied, as in *Damon*, on the basis of the defendant's waiver. For purposes of completeness, we add that the motion fails on the merits in any event.

The defendant has served half of the three-year term of supervised release. To his credit, this period has been uneventful. The burdens placed on him are not substantial. He was placed on "low risk" supervision on November 2, 2018. That supervision requires very little of the defendant beyond remaining crime-free and reporting infrequently, usually by phone to his supervising probation officer. In his motion, the defendant does not allege that his supervision is in any way impeding his ability to obtain employment, travel, or live his life, other than not being able to secure residence in Egypt at this time, where his family recently relocated,

In these circumstances, early termination of supervised release is not warranted. The applicable statute, 18 U.S.C. § 3583(e), provides district courts with authority to grant early termination of supervised release if, in the discretion of the Court, such relief is appropriate and in the interests of justice. That section provides that

> [t]he court may, after considering the factors set forth in Section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7) – (1) terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release, pursuant to the provisions of the

> Federal Rules of Criminal Procedure relating to the modification of probation, if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice.

18 U.S.C. § 3583(e).

It is the defendant's burden, "as the party receiving the benefit of early termination, to demonstrate that such a course of action is justified." *United States v. Weber*, 451 F.3d 552, 559 n.9 (9th Cir. 2006). It "logically follows that the burden of ultimate persuasion should rest upon the party attempting to adjust the sentence." *United States v. McDowell*, 888 F.2d 285, 291 (3d Cir. 1989).

The Court has discretion in determining whether to terminate supervised release. It "need not find that an exceptional, extraordinary, new, or unforeseen circumstance warrants early termination of a term of supervised release before granting a motion under 18 U.S.C. § 3583(e)(1)." *United States v. Melvin*, 978 F.3d 49 (3d Cir. 2020). However, the Third Circuit stated:

> We think that *[g]enerally*, early termination of supervised release under § 3583(e)(1) will be proper only when the sentencing judge is satisfied that new or unforeseen circumstances warrant it. . . . That is because, if a sentence was "sufficient, but not greater than necessary" when first pronounced, 18 U.S.C. § 3553(a), we would expect that something will have changed in the interim that would justify an early end to a term of supervised release. But we disavow any suggestion that new or unforeseen circumstances must be shown.

*Id.* at 53 (citation and quotation marks omitted).

Here, there has been no change in circumstances, and accordingly termination of supervised release is not advised even putting the waiver aside. The defendant's compliance with the terms of supervised release is merely what is expected. *See, e.g.*,

*United States v. Guilliatt,* 2005 WL 589354, *1 (E.D. Pa. 2005) ("The conduct cited by defendant in support of his Petition is commendable. However, it is nothing more than what is required under the terms of defendant's probation."). If simple compliance with the terms of the court's supervision were sufficient to justify early termination, "the exception would swallow the rule." *Id. See also United States v. Lohman*, 2007 WL 1430282, *1 (E.D. Wis. 2007) (holding that if simple compliance were sufficient for early termination, "every defendant who avoided revocation would be eligible for early termination").

It bears emphasis that the term of supervised release is an important component of the defendant's sentence. In *Gall v. United States*, 552 U.S. 38, 48 (2007), the Supreme Court explained at length that a term of supervised release is no trifling matter; it is a form of punishment that involves restrictions on liberty. For this reason, habitual post-sentencing alteration of a term of supervised release would defeat the goals of transparency and truth in sentencing that animated the Sentencing Reform Act of 1984, which implemented determinate federal sentencing while also creating the provisions for supervised release. Such a result would, in part, offend the expectations of victims of crime, who heard the sentence imposed only to learn later that the offender does not have to serve the full term.

For all of these reasons, the denial of early termination of supervised release is not a miscarriage of justice. To the contrary, the defendant does not present any circumstances justifying it, even if such remedy had not been already been waived by the defendant.

## IV. CONCLUSION

For these reasons, the motion for early termination of supervised release should be denied.

Respectfully submitted,

JENNIFER ARBITTIER WILLIAMS
Acting United States Attorney


*/s K.T. Newton*
K.T. NEWTON
Assistant United States Attorney

Dated: September 20, 2021

## CERTIFICATE OF SERVICE

I hereby certify that this pleading has been served on the Filing User identified below through the Electronic Case Filing (ECF) system:

>David S. Nenner, Esquire
>Attorney for defendant Shanif Rodgers

>*/s K.T. Newton*
>K.T. NEWTON
>Assistant United States Attorney

DATED: September 20, 2021.